**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES V. RICHARDSON, | ) | CASE NO. 3:15-CV-539 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| BENNIE KELLY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the Court is the petition of Charles V. Richardson ("Richardson" or "Petitioner"), for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the cases of *State of Ohio vs. Richardson*, Case Nos. 13-CR-0036 and 13-CR-0047 (Seneca County Oct. 25, 2015).  (Doc. No. 8-1, Ex. 2.)  For the following reasons, the magistrate judge recommends that the petition be DISMISSED with prejudice.

## I.  State-Court Proceedings

**A.  Indictment and Guilty Plea**

In March 2013, a Seneca County Grand Jury issued an indictment in Case Number 13-CR-0036, charging Petitioner with one count of trafficking in cocaine in violation of Ohio Rev. Code § 2925.03(A),(C)(4)(g), a first-degree felony (Count One); and one count of possession of cocaine in violation of Ohio Rev. Code §

2925.11(A),(C)(4)(a), a fifth-degree felony (Count Two).  (Doc. No. 8-1 at Exh. 4.)

That same month, the Seneca County Grand Jury issued an indictment in Case Number 13-CR-0047, charging Petitioner with six counts of trafficking in cocaine, as follows: (1) trafficking in cocaine in violation of Ohio Rev. Code § 2925.03(A)(1), (C)(4)(b), a fourth-degree felony, along with a specification that the offense was committed in the vicinity of a school (Count One); (2) trafficking in cocaine in violation of Ohio Rev. Code § 2925.03(A), (C)(4)(d), a third-degree felony (Count Two); (3) trafficking in cocaine in violation of Ohio Rev. Code  § 2925.03(A), (C)(4)(f), a first-degree felony (Count Three); (4) trafficking in cocaine in violation of Ohio Rev. Code 2925.03(A), (C)(4)(e), a second-degree felony (Count Four); (5) trafficking in cocaine in violation of Ohio Rev. Code § 2925.03(A), (C)(4)(f), a first-degree felony (Count Five); and (6) trafficking in cocaine in violation of Ohio Rev. Code § 2925.03(A), (C)(4)(g), a first-degree felony (Count Six).[1]  (*Id.* at Exh. 7.)

Petitioner entered pleas of not guilty in both cases.  *See* Docket Sheets for State v. Richardson, Seneca County Court of Common Pleas Case Nos. 13-CR-0036, 13-CR-0047. [2]

In April 2013, Petitioner, through counsel, moved to dismiss the indictments in both cases.  He alleged prosecutorial impropriety and conflict of interest based on the

---

[1] In both cases, the State later moved to amend the indictments to accurately reflect the penalties for the first and third degree felony trafficking charges.  (Doc. No. 8-1, Exhs. 5, 8.)  The trial court granted the motions and amended the indictments in April 2013.  (*Id.* at Exhs. 6, 9.)

[2] Respondent did not include the docket sheets for these cases as exhibits to the Return.  They can found at the Seneca County Court of Common Pleas website, at www.senecaco.org/cpweb/docket.

2

fact that Seneca County Prosecuting Attorney Derek DeVine had previously represented him in a criminal drug-trafficking matter in 2001 as his court-appointed defense counsel.  (*Id.* at Exh. 10.)  The State filed a brief in opposition.  (*Id.* at Exh. 11.) The trial court overruled the motion on May 7, 2013.  (*Id.* at Exh. 12.)

In June 2013, Prosecutor DeVine requested the trial court appoint two representatives from the Ohio Attorney General's Office to replace him as special prosecutors in the cases.  (*Id.* at Exh. 13.)  The request was "based upon the fact that there may be a conflict of interest or the appearance of such conflict in the Seneca County Prosecuting Attorney's Office and any further prosecution by this office involving this particular criminal matter would not be in the best interests of the public in view of the fact that charges of either bias or favoritism could be made against this office."  (*Id.*) The court granted the request, and appointed Assistant Ohio Attorneys General Matthew Donanue and Sarah Schenck "to handle any further legal proceedings" in Case Nos. 13-CR-0036 and 13-CR-0047.  (*Id.* at Exh. 14.)

In July 2013, Petitioner, through counsel, filed a motion requesting the transcript of the grand jury proceedings against him, arguing it "may contain information favorable to the defense and, as such, [is] discoverable under Rule 16(B)(1)(f) of the Ohio Rules of Criminal Procedure."  (*Id.* at Exh. 15.)  The State filed a brief in opposition.  (*Id.* at Exh. 16.)  After conducting a hearing on the matter (Doc. No. 8-2), the trial court denied the motion.[3]  (*Id.* at Exh. 17.)  The court reasoned:

---

[3] During the hearing, it was agreed that Case Numbers 13-CR-0036 and 13-CR-0047 would be consolidated for purposes of trial.  (Doc. No. 8-2 at Tr. 4.)  The trial court memorialized the consolidation of the two cases in a Judgment Entry issued August 16, 2013.  (Doc. No. 8-1 at Exh. 17.)

In essence, the defendant requests the transcripts because Mr. DeVine, the Seneca County Prosecuting Attorney had represented the defendant during the time Mr. DeVine was in private practice.  The case was in the year 2001.

Defendant says Mr. DeVine, with his knowledge of the defendant's prior record, could ask witnesses questions to put the prior record in front of the Grand Jury.  Assuming that was true, it still does not show a particularized need for the transcript.  There is no assertion that any of the witnesses misled the Grand Jury or were inconsistent in their answers.

(*Id.*)

## B.    Conviction

In October 2013, Petitioner, through counsel, filed a petition to enter a no contest plea to two counts of cocaine trafficking, one from each case.[4]  (*Id.* at Exh. 18)  The trial court held a change-of-plea hearing, after which Petitioner pled no contest to the charges in open court.  (Doc. No. 8-3 at Tr. 15.)  The court then found Petitioner guilty of both first-degree felony charges and, pursuant to the negotiated plea agreement, sentenced him to a term of eleven years' imprisonment on each charge, to be served consecutively for a total term of twenty two (22) years incarceration.[5]  (*Id.* at Tr. 15-18.), The court also imposed five years of post-release control.  (*Id.*)

## C.    Direct Appeal

Petitioner, through trial counsel, filed timely notices of appeal.  (Doc. No. 8-1 at

---

[4]Specifically, Petitioner pled guilty to Count One in Case No. 13-CR-0036 and Count Six in Case No. 13-CR-0047.  (Doc. No. 8-1 at Exh. 18.)  Both of these counts charged felonies of the first degree.   In addition, Count Six in Case No. 13-CR-0047 included a specification that the offense was committed in the vicinity of a school.  (*Id.* at Exhs. 7,9.)

[5]Upon motion of the parties, the trial court nolled the remaining counts (Count Two in Case No. 13-CR-0036 and Counts One through Five in Case No. 13-CR-0047). (Doc. No. 8-3 at Tr. 20.)

Exh. 19.)  The two cases were consolidated for purposes of appeal.  (*Id.* at Exh. 22.)  In

his appellate brief, Petitioner, through new counsel, asserted the following assignment

of error:

> The trial court abused its discretion when it refused to
> provide Charles V. Richardson with transcripts of the grand
> jury proceedings against him, even though the prosecutor
> who conducted those proceedings represented Mr.
> Richardson in a prior case.  (August 16, 2013 Judgement
> Entry; 8/15/2013 T.p.6).

(*Id.* at Exh. 23.)  The State filed a brief in opposition, to which Petitioner replied.  (*Id.* at

Exhs. 24, 25.)

On August 18, 2014, the state appellate court affirmed Petitioner's convictions

and sentences.  *State v. Richardson*, 17 N.E.3d 644, 654, 2014-Ohio-3541 (Ohio Ct.

App. 2014).  (Doc. No. 8-1 at Exh. 3.)

On October 22, 2014, Petitioner, through new counsel, filed a notice of appeal

and motion for delayed appeal in the Ohio Supreme Court.  (*Id.* at Exhs. 26, 27.)

Petitioner argued there was good cause for the untimely filing because his counsel's law

clerk miscalculated the filing date due to a family crisis.[6]  (*Id.* at Exh. 27.)  The Ohio

Supreme Court summarily denied the motion for delayed appeal and dismissed the

case.  (*Id.* at Exh. 28.)

**D.    State Post-Conviction Proceedings**

---

[6] Specifically, in an affidavit attached to the motion, the law clerk (who was
responsible for calculating the filing deadline) for Petitioner's attorney stated he had
been overwhelmed with his daughter's serious illness and "failed to accurately count the
time period for which [Petitioner's] due date to file his Memorandum in Support of
Jurisdiction would be.  I was just overwhelmed and made a mistake."  (Doc. No. 8-1,
Exh. 27 at 165.)

In May 2014, Petitioner filed a *pro se* petition for writ of habeas corpus in the Lorain County Court of Common Pleas, in which he argued that "[n]o complaint or proper affidavit was filed to even issue a warrant for [his] arrest, which makes the trial court without jurisdiction, and violated Petitioner's Sixth and Fourteenth Amendment rights."  (*Id.* at Exh. 32.)  Petitioner also argued prosecutorial misconduct on the grounds that "Mr. DeVine was Petitioner's defense counsel, then he was the prosecutor who went before the grand jury to get the indictments issued against Petitioner which tainted his case from the beginning to the end, which the 22 years sentence is illegal and contrary to law."  (*Id.*)

The State filed a motion to dismiss the petition for failure to state a claim upon which relief can be granted, and a motion for summary judgment as a matter of law.  (*Id.* at Exh. 33.)  In September 2014, the Lorain County Court of Common Pleas denied the State's motion to dismiss but granted the summary judgment motion.  (*Id.* at Exh. 35.) Petitioner did not appeal that judgment.

Meanwhile, in July 2014, Petitioner filed a *pro se* post-conviction petition in the Seneca County Court of Common Pleas.  (*Id.* at Exh. 29.)  Therein, Petitioner set forth the following claim:

> 1.  Denied effective assistance of counsel guaranteed by Article I, [S]ection 10 of the Ohio Const[itution] and the [Sixth] and [Fourteenth] Amendments to the U.S. Const[itution] when the attorney did not have the drugs tested by independent analysis.

(*Id.*)  The State opposed the petition and moved for summary judgment.  (*Id.* at Exh. 30.)  The trial court denied the petition on August 22, 2014.  (*Id.* at Exh. 31.)  Petitioner did not appeal that judgment.

6

## II.  Proceedings in this Court

In March 2015, Petitioner, through counsel, filed his § 2254 petition.  (Doc. No.

1.)  He asserts the following ground for relief:

> Petitioner's constitutional rights were violated when the trial
> court abused its discretion when it refused to provide
> Petitioner-Defendant Charles V. Richardson with transcripts
> of the grand jury proceedings against him, even though the
> prosecutor who conducted those proceedings represented
> Petitioner-Defendant in [a] prior case.

(Doc. No. 1-1.)  In addition, although not separately assigned as error, Petitioner asserts

a claim of ineffective assistance of trial counsel in his Memorandum in Support of his

Petition, arguing that "trial counsel put little to no effort in preparing or putting forth a

defense on the behalf of the Petitioner in this case."  (Dioc. No. 1-1 at 12.)

Respondent filed his Return of Writ on July 9, 2015.  (Doc. No. 8.)  Petitioner did

not file a Traverse.

## III.  Procedural and Related Issues

### A.    Jurisdiction

A state prisoner may file a § 2254 petition in "the district court for the district

wherein such person is in custody or in the district court for the district within which the

State court was held which convicted and sentenced him."  28 U.S.C. § 2241(d).  The

Court of Common Pleas of Seneca County, Ohio sentenced Petitioner.  (Doc. No. 5-1,

Ex. 7.)  Seneca County is within this Court's geographic jurisdiction.  *See* 28 U.S.C.

§ 115(a).  Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

### B.    Exhaustion and Procedural Default

A state prisoner must exhaust all available state remedies or have no remaining

7

state remedies available prior to seeking review of a conviction via federal habeas corpus.  *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *See Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).  If any state procedures for relief remain available, the petitioner has not exhausted his state remedies, and, generally, a federal court must dismiss his petition.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  Where, however, there are no longer any state court remedies still available to a petitioner with respect to a particular claim, this Court may deem that claim procedurally defaulted.  *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' *Engle v. Isaac*, 456 U.S. 107, 125, n.28 (1982), it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law,' *Castille*[, 489 U.S. at 351].").

Generally, a federal court must decline to review  "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*,

8

501 U.S. 722, 750 (1991).

If the State argues that a petitioner has procedurally defaulted a claim, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction.  . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986).

### 1.    Application to Petitioner's Grounds for Relief

#### a.    Grand Jury Claim

Petitioner claims the trial court violated his constitutional due process rights when it denied his request for the transcript of the grand jury proceedings that led to the indictments against him, even though the prosecutor who conducted those proceedings had represented him in a prior case.  (Doc. No. 1-1 at 4.)  Respondent argues this claim is procedurally defaulted.  (Doc. No. 8 at 17-19.)

Petitioner raised a claim on direct appeal based on the trial court's refusal to provide access to the transcript of the grand jury proceedings.  (Doc. No. 8-1 at Exh.

23.)  The state appellate court addressed the claim on the merits and denied it.  *See*

*Richardson*, 17 N.E.3d at 654.  Petitioner failed to timely appeal to the Ohio Supreme

Court and, instead, filed a motion for delayed appeal.  The Ohio Supreme Court

summarily denied the motion.  (Doc. No. 8-1 at Exhs. 26-28.)

    Under Ohio's procedural rules, the Ohio Supreme Court has jurisdiction over

timely appeals; that is, appeals made within 45 days of the state appellate court's

decision.  *See* Ohio S.Ct. Prac. R. II § 2(A)(1). [7]  The Ohio Supreme Court may, in its

discretion, take jurisdiction over untimely felony appeals upon motion for leave to file a

delayed appeal pursuant to Ohio S.Ct. Prac. R. § 2(A)(4)(a).  However, where the Ohio

Supreme Court does not allow the delayed appeal, the Sixth Circuit has held that even

an unexplained decision by the Ohio Supreme Court decision denying leave to file an

untimely appeal is presumed to enforce any applicable procedural bar:

> This case turns upon whether the Ohio Supreme Court entry denying
> Bonilla's motion for leave to file a delayed appeal constitutes a procedural
> ruling sufficient to bar federal court review of Bonilla's habeas corpus
> petition.  Upon examination of the Ohio Supreme Court Rules, we
> conclude that it does.  The Ohio Supreme Court Rules require a motion
> for a delayed appeal to state "the date of entry of the judgment being
> appealed and adequate reasons for the delay." Ohio Sup.Ct. R. II,
> Section 2(A)(4)(a).  In addition, the motion must be accompanied by a
> supporting affidavit and a "copy of the decision being appealed." *Id.*  A
> motion for a delayed appeal is not required to contain the actual
> claims and supporting arguments sought to be presented on appeal. *Id.*
> Instead, only when "the Supreme Court grants a motion for delayed
> appeal," is the appellant required to "file a memorandum in support of
> jurisdiction."  Ohio Sup.Ct. R. II, Section 2(A)(4) (c).  Thus, the applicable
> Ohio court rules indicate that the denial of a motion for a delayed appeal

_____

[7]The Ohio Supreme Court adopted new rules of practice, which became effective
on January 1, 2013.  The 45–day time period has not been changed, though the new
rules can be found at Ohio S.Ct. R. 6.01(A)(1) & 7.01(A)(1).
-

is a procedural ruling, not a ruling on the merits.

*Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004).  *See also Baker v. Bradshaw*, 495 Fed. Appx. 560, 565 (6th Cir. 2012) ("the timeliness requirements for an appeal to the Ohio Supreme Court ... constitute adequate and independent state grounds to preclude hearing an untimely claim on the merits."); *Crutchfield v. Warden*, 2014 WL 3899287 (S.D. Ohio Aug. 11, 2014) (finding that where the petitioner's motion for delayed appeal before the Ohio Supreme Court was denied, the petitioner must demonstrate cause for his default and actual prejudice to avoid dismissal).

Accordingly, this Court finds this claim is procedurally defaulted and should be dismissed on that basis, unless Petitioner can establish cause and prejudice to excuse the default.  Petitioner does not offer any argument in his Petition regarding cause or prejudice to excuse the default of this claim, nor does he contend he is actually innocent.  Moreover, although represented by counsel, Petitioner failed to file a Traverse addressing Respondent's argument that this claim is procedurally defaulted.

In the absence of any meaningful argument to the contrary,[8] the Court finds Petitioner's grand jury claim should be dismissed as procedurally defaulted. Moreover, even if the Court were to excuse the default, Petitioner's claim would fail for the additional reasons discussed in Section IV of this Report & Recommendation.

**b.      Ineffective Assistance of Trial Counsel**

---

[8] In his motion for delayed appeal, Petitioner argued his failure to timely appeal the state appellate court decision was due to miscalculation of the filing date by his counsel's law clerk.  (Doc. No. 8-1 at Exh. 27.)  Petitioner does not argue in these proceedings, however, that counsel's error constitutes cause to excuse the default of this claim.

Although not specifically identified in the Petition as a ground for relief, Petitioner argues in his Memorandum in Support that trial counsel was ineffective for failing to properly investigate and defend his case.  (Doc. No. 1-1 at 12.)  Specifically, Petitioner argues as follows:

> Here, the record reflects that Petitioner's trial counsel convinced the Petitioner into entering a no contest plea with the understanding that the Petitioner would be found guilty and sentenced to serve mandatory maximum sentence of 11 years on each count and, as part of his plea, he agreed to serve them consecutively therefore having the Petitioner agreeing to serve 22 years on a no contest plea.  Clearly, trial counsel put little to no effort in preparing or putting forth a defense on the behalf of the Petitioner in this instant case.  But, instead put all his eggs in one basket, fighting for dismissal of the Petitioner's case because of prosecutor misconduct.  Considering the magnitude of the Petitioner's case before the Seneca Common Pleas Court, trial counsel was derelict in his duties to the Petitioner in this instant case.

(*Id.*)  He further asserts "there is a reasonable probability that if counsel had investigated all the facts in this case and prepared a defense then at the very least a better plea offer could have been obtained and the outcome of the case would have been different."  (*Id.*)

Respondent argues this claim is unexhausted and procedurally defaulted.  He maintains Petitioner never raised this specific ineffective assistance of trial counsel claim in state court.  Respondent then argues that, even if the Court were to construe Petitioner's post-conviction petition as raising this claim, it is nonetheless defaulted because Petitioner failed to appeal the trial court's denial of his post-conviction petition.  Petitioner does not address the issue of exhaustion or procedural default in his Petition, and he failed to file a Traverse.

The Court finds Petitioner's ineffective assistance of trial counsel claim is

procedurally barred.[9]  The record reveals Petitioner did not raise this particular claim in state court.  He did not assert this claim on direct appeal and, although he filed a post-conviction petition, Petitioner did not assert ineffective assistance of trial counsel based on counsel's alleged "failure to investigate or prepare a defense."  Petitioner makes no argument and cites no legal authority for the proposition that, under these circumstances, there is a mechanism under Ohio law for him to now raise this claim in state court.  Accordingly, and in the absence of any meaningful argument to the contrary, the Court finds that no viable state court remedies remain with respect to this claim, and this Court may deem the claim procedurally defaulted.  *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' *Engle v. Isaac*, 456 U.S. 107, 125, n.28 (1982), it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law,' *Castille*[, 489 U.S. at 351].").

Moreover, even if the Court were to construe Petitioner's post-conviction petition as asserting this particular ineffective assistance claim, the claim would nonetheless be defaulted.  The state trial court denied Petitioner's post-conviction petition on the merits.  Petitioner failed to appeal the denial of his petition, and he may no longer do so as Ohio law does not permit delayed appeals in post-conviction proceedings.  *See State v. Nichols*, 11 Ohio St.3d 40, 43, 463 N.E.2d 375, 378 (1984) (holding that "a delayed

---

[9] The Court expresses some doubt as to whether this ground was properly raised.  Petitioner did not separately assert this ground in his Petition but, rather, simply added it to the end of his Memorandum in Support of his Petition, devoting only six short paragraphs to his argument regarding this claim. Nonetheless, the Court will give Petitioner every benefit of the doubt and address this claim, as set forth above.

appeal pursuant to App. R. 5(A) is not available in the appeal of a post-conviction relief

determination"); *Nesser v. Wolfe*, 2010 WL 1141006 at * 4 (6th Cir. March 25, 2010)

(observing that "Ohio does not permit delayed appeals in post-conviction proceedings");

*Alexander v. Coleman*, 2012 WL 3263116 at * 4 (N.D. Ohio Aug. 9, 2012) (same).

Thus, even if his post-conviction petition is construed as raising this claim, Ohio law

unequivocally prevents Petitioner from pursuing it via delayed appeal.

In light of the above, the Court finds any ineffective assistance of trial counsel

claim is procedurally defaulted and should be dismissed on that basis, unless Petitioner

can establish cause and prejudice to excuse the default.  Once again, however,

Petitioner does not offer any argument in his Petition regarding cause or prejudice to

excuse the default of this claim, nor does he contend he is actually innocent.  Moreover,

although represented by counsel, Petitioner failed to file a Traverse addressing

Respondent's argument that this claim is procedurally defaulted.

Accordingly, the Court finds that, to the extent Petitioner has raised an ineffective

assistance of trial counsel claim, it should be dismissed as procedurally defaulted.

## IV.  The Merits

### A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA") altered the

standard of review that a federal court must apply when deciding whether to grant a writ

of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim resulted in a decision that was

14

> contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the
> Supreme Court of the United States; or resulted in a decision
> that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court
> proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *See Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *See Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which
> a state prisoner may obtain federal habeas relief with
> respect to a claim adjudicated on the merits in state court.
> Under the statute, a federal court may grant a writ of habeas
> corpus if the relevant state-court decision was either (1)
> "*contrary to* . . . clearly established Federal law, as
> determined by the Supreme Court of the United States," or
> (2) "*involved an unreasonable application of* . . . clearly
> established Federal law, as determined by the Supreme
> Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.   A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and

15

unreasonably applies it to the facts of the case at hand.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been objectively unreasonable."  *Id.* at 520-21 (internal citations and quotation marks omitted).

**B.**     **Petitioner's Grand Jury Claim**

Petitioner asserts his federal due process rights were violated when the state courts refused to provide access to the grand jury transcripts in his underlying criminal cases.  (Doc. No. 1-1.)  He asserts the state courts "did not address the possibility that attorney Derek W. DeVine might have improperly used his prior knowledge from representing Mr. Richardson during grand jury proceedings to procure an indictment in this case."  (*Id.* at 7-8.)  Petitioner maintains the state courts unreasonably denied him the opportunity to determine whether Prosecutor DeVine improperly used confidential attorney client information about Petitioner in procuring his indictments.  (*Id.*)

Respondent first argues that, to the extent Petitioner's claim is "strictly a state law issue," it is non-cognizable in these federal habeas proceedings.  (Doc. No. 8 at 26.)  To the extent Petitioner's claim raises "federal constitutional implications," Respondent maintains "Richardson has not identified any clearly established precedent where the Supreme Court has addressed his specific claims."  (*Id.* at 28.)  Consequently, Respondent asserts "this Court cannot find that the state appellate court acted contrary to, or unreasonably applied, clearly established Supreme Court or federal law and this Court cannot grant Richardson habeas relief."  (*Id.*)  Petitioner did not file a Traverse

16

addressing these arguments.

Petitioner raised a claim on direct appeal based on the trial court's refusal to provide access to the transcript of the grand jury proceedings.  (Doc. No. 8-1 at Exh. 23.)   The state appellate court evaluated this claim on the merits as follows:

> {¶ 15} "A presumption of regularity attaches to all judicial proceedings." *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684, ¶ 19.  *See also United States v. Mechanik*, 475 U.S. 66, 75, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) (grand jury proceedings carry a presumption of regularity, which may be dispelled with particularized proof of irregularities in the grand jury process).

> {¶ 16} Disclosure of grand jury testimony is controlled by Crim.R. 6(E). *State v. Godfrey*, 181 Ohio App.3d 75, 2009-Ohio-547, 907 N.E.2d 1230, ¶ 8 (3d Dist.), citing *State v. Greer*, 66 Ohio St.2d 139, 420 N.E.2d 982 (1981), paragraph one of the syllabus.  Crim. R. 6 espouses the secrecy of the grand jury and states, in relevant part:

>> Deliberations of the grand jury and the vote of any grand juror shall not be disclosed.  Disclosure of other matters occurring before the grand jury may be made to the prosecuting attorney for use in the performance of his duties. A grand juror [or] prosecuting attorney * * * may disclose matters occurring before the grand jury, other than the deliberations of a grand jury or the vote of a grand juror, but may disclose such matters only when so directed by the court preliminary to or in connection with a judicial proceeding * * *.

> *State v. Hook*, 3d Dist. Marion No. 9–97–21, 1997 WL 445814, *2 (Aug. 6, 1997), citing Crim.R. 6(E).

> {¶ 17} "Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy."  *Greer* at paragraph two of the syllabus, citing *State v. Patterson*, 28 Ohio St.2d 181, 277 N.E.2d 201 (1971), paragraph three of the syllabus.  To demonstrate a particularized need for the disclosure of grand jury testimony, a defendant must show that "it is probable that the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial

17

testimony." *Id*. at paragraph three of the syllabus.  "Specifically, the trial court should determine whether the failure to disclose the testimony will deny [the defendant] a fair trial or, in the alternative, whether [the defendant's] request for disclosure is a fishing expedition * * *."  *State v. Horger*, 170 Ohio App.3d 383, 2007-Ohio-665, 867 N.E.2d 466, ¶ 13 (5th Dist.).  A general request for grand jury transcripts does not demonstrate a particularized need.  *Hook* at *3, citing *State v. Richey*, 64 Ohio St.3d 353, 366, 595 N.E.2d 915 (1992) and *State v. CECOS Internatl., Inc.*, 38 Ohio St.3d 120, 120, 526 N.E.2d 807 (1988).

* * *

{¶ 19} "Determining whether a particularized need exists is a matter within the trial court's discretion."  *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 41, citing *Greer* at paragraph one of the syllabus.  As such, the trial court's decision regarding the review and release of grand jury transcripts will not be reversed absent an abuse of discretion.  *State v. Coley*, 93 Ohio St.3d 253, 261, 754 N.E.2d 1129 (2001), citing *State v. Brown*, 38 Ohio St.3d 305, 308, 528 N.E.2d 523 (1988).  An abuse of discretion is more than a mere error in judgment; it suggests that a decision is unreasonable, arbitrary, or unconscionable.  *State v. Adams*, 62 Ohio St.2d 151, 157–158, 404 N.E.2d 144 (1980).

{¶ 20}  We agree with the State that Richardson failed to demonstrate a particularized need for review and disclosure of the grand jury transcripts.  Richardson provided no evidence that Prosecutor DeVine relied on his prior representation of him to elicit testimony from any witnesses.

* * *

{¶ 24} It was within the trial court's discretion to determine whether Richardson demonstrated a particularized need for his counsel, as well as counsel for the State and the trial court, to examine the grand jury transcripts.  Richardson provided no evidence that Prosecutor DeVine solicited any testimony from any witness regarding his prior conviction based on Prosecutor DeVine's prior representation of him or relied on any knowledge that he may have obtained from his prior representation of him.  *See State v. Lawson*, 64 Ohio St.3d 336, 345, 595 N.E.2d 902 (1992) (defendant cited no specific facts from the record to support a particularized need to inspect the grand jury transcripts).

{¶ 25} The purpose of Crim.R. 6(E) is to protect the secrecy of grand jury proceedings and the anonymity of witnesses.  *See In re Petition for Disclosure of Evidence Presented to Franklin Cty. Grand Juries in 1970*, 63 Ohio St.2d 212, 219, 407 N.E.2d 513 (1980), citing *United States v.*

18

*Procter & Gamble Co.*, 356 U.S. 677, 681–682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) . . . . and *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 219, fn. 10, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979).  Generally, the request for grand jury transcripts involves allegations of inconsistent witness testimony.  According to Richardson, because Crim.R. 6 is designed to protect witnesses and jurors, a relaxed standard should be applied in this case since this case does not involve inconsistent witness testimony or juror misconduct.  More specifically, Richardson argues that he needs to demonstrate only that "the ends of justice" require disclosure of the grand jury transcripts based solely on Prosecutor DeVine's role as Richardson's counsel in 2001 and as the State's counsel against him in these cases since the traditional "inconsistencies" analysis is inapplicable here.  (Appellant's Brief at 4); (Appellant's Reply Brief at 2).  We disagree.

{¶ 26}  It is an issue of first impression whether a prosecutor's role as a defendant's counsel in a prior matter and then as the State's counsel against the same defendant in a similar case, on its face, is sufficient to demonstrate a particularized need to inspect grand jury transcripts.  As a matter of first impression, we could not find any authority that directly addresses this issue; however, federal courts have held that the particularized need standard applicable to allegations involving inconsistent witness testimony is the same standard applicable to allegations of prosecutorial misconduct.  *See, e.g., United States v. Wilson*, 565 F.Supp. 1416, 1437 (S.D.N.Y.1983) (a defendant cannot rely on speculation and surmise of prosecutorial abuse to obtain access to grand jury transcripts); *United States v. Canino*, 949 F.2d 928, 943 (7th Cir.1991) (the mere unsupported speculation of possible prosecutorial abuse does not meet the particularized need standard); *United States v. Best,* N.D.Ind. No. 2:00–CR–171, 2007 WL 1058231 (Apr. 4, 2007) (argument that "there is no way a Grand Jury should have indicted [the defendant] * * * without some kind of prosecutor misconduct * * * " is fishing for anything helpful to a defendant's cause and does not demonstrate a particularized need to inspect grand jury transcripts), citing *In re Grand Jury Proceedings*, 942 F.2d 1195, 1199 (7th Cir.1991) ("The secrecy of a grand jury proceeding is not to be pierced by such a slender reed: a mere possibility of benefit does not satisfy the required showing of a particularized need.").  Moreover, federal courts have held that "[a] review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct."  *U.S. v. Torres*, 901 F.2d 205, 233 (2d Cir.1990), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36 (2d Cir.2010), citing *Wilson* at 1436–1437.

{¶ 27} Therefore, we will apply the particularized need test to the issue raised by this case in the same manner it has been applied to allegations

of inconsistent witness testimony.  *See, e.g., Greer*, 66 Ohio St.2d 139, 420 N.E.2d 982, at paragraph three of the syllabus; *Lang*, 129 Ohio St.3d 512, 954 N.E.2d 596, at ¶ 44–45; *Hook*, 1997 WL 445814, at *2–3.  As such, Richardson "was required to show that nondisclosure of the grand jury transcript[s] would probably deprive him of a fair trial." (Emphasis sic.) *Lang* at ¶ 45, citing *Greer* at paragraph three of the syllabus.  More specifically, Richardson was required to articulate some factual basis that Prosecutor DeVine relied on his prior representation of him to elicit testimony from witnesses regarding his prior conviction to improperly obtain the indictments in these cases.

{¶ 28}  Richardson failed to meet his burden of showing that a particularized need outweighed the policy of secrecy because his particularized need was based only on speculation of prosecutorial misconduct and his own fishing expedition to see if the indictments were properly issued.  *See State v. Fulton*, 12th Dist. Clermont No. CA2002–10–085, 2003-Ohio-5432, 2003 WL 22326575, ¶ 39. * * *

{¶ 29} Simply stating that Prosecutor DeVine's role as Richardson's counsel in 2001 and as the State's counsel against him in these matters appears to be a conflict of interest does not satisfy the factual basis required to demonstrate a particularized need.  *See State v. Burroughs*, 165 Ohio App.3d 172, 2005-Ohio-6411, 845 N.E.2d 540, ¶ 14 (3d Dist.) (defendant's request to review the grand jury transcripts was overruled because it was merely a fishing expedition based on speculation).  A particularized need cannot be established on the basis of speculative allegations.  *See Godfrey*, 181 Ohio App.3d 75, 2009-Ohio-547, 907 N.E.2d 1230, at ¶ 15; *CECOS Internatl.*, 38 Ohio St.3d at 125, 526 N.E.2d 807.  Nor can a particularized need be established on the generalized basis that inspection of the grand jury transcripts will indicate whether the indictment was properly issued.  *Brown*, 38 Ohio St.3d at 308, 528 N.E.2d 523 (contention that reviewing the grand jury transcripts would reveal whether an indictment was properly issued is insufficient to demonstrate a particularized need and that the trial court abused its discretion in denying the defendant's motion to review the transcripts).

*Richardson*, 17 N.E.3d 644, 648-652.

The state appellate court then discussed Petitioner's motion to dismiss, finding it relevant to the analysis because "it also demonstrates regularity of the grand jury proceedings." *Id.* at 652.  After reciting state law regarding potential conflict of interest and appearance of impropriety, the court found that "Richardson provided no evidence of

a conflict of interest" and "failed to demonstrate a substantial relationship between his prior drug-trafficking conviction and these cases."  *Id.* at 652-653.  Thus, the court found "the fact that a representative from the Ohio Attorney General's Office was appointed to prosecute Richardson in Prosecutor DeVine's place is also not dispositive of any misconduct that would demonstrate a particularized need."  *Id.* at 653.  The state court concluded as follows:

> {¶ 34}  Accordingly, we hold that Richardson did not demonstrate a particularized need justifying his review of the grand jury transcripts. Richardson did not show that nondisclosure of the grand jury transcripts would probably result in an unfair trial based on Prosecutor DeVine's role as Richardson's counsel in 2001 and as the State's counsel against him in these matters.  More simply put, Richardson did not provide any factual details which could sustain a showing of a particularized need. As a result, we conclude that the trial court did not abuse its discretion in concluding that Richardson failed to demonstrate a particularized need to review the grand jury transcripts.

*Id.*

To the extent Petitioner's grand jury claim asserts an error of state law, it is non-cognizable in these federal habeas proceedings.  It is well-established that "it is not the province of a federal habeas court to reexamine state-court determination on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  *See also Treesh v. Bagley*, 2007 WL 1039081, *17 (N.D. Ohio Mar.31, 2007) (Oliver, J.) (relying on *Estelle* for its finding that, to the extent the petitioner was claiming an error of state law relative to the denial of his request for a record of grand jury proceedings, the court could not rule on the matter). "[M]isapplication of state law is not cognizable in a federal

21

habeas proceeding unless a petitioner can prove that the error deprived him of a fair trial or proceeding." *Russell v. Anderson*, 2008 WL 4534144, *6 (N.D. Ohio Oct. 6, 2008) (Polster, J.) (concluding the petitioner had failed to establish a due process violation based on the trial court's denial of his request for grand jury transcripts).   *See also Cutts v. Smith*, 2013 WL 2152143 at * 45 (N.D. Ohio May 17, 2013) (Burke, M.J.).

To the extent this claim is construed as asserting a federal due process violation, it is without merit.  "There is no clearly established Supreme Court precedent recognizing a constitutional right to obtain access to grand jury transcripts under any circumstances."  *Lang v. Bobby*, 2015 WL 1423490 at * 56 (N.D. Ohio March 27, 2015) (Zouhary, J.).  As another judge in this District has explained:

> Generally, an accused is not entitled to see grand jury transcripts unless required by the ends of justice and he shows that a particular need for disclosure exists that outweighs the need for secrecy.  *United States v. Procter and Gamble*, 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); *Garrett v. Moore*, 2007 U.S. Dist. LEXIS 6626, 2007 WL 315093, *10 (S.D. Ohio Jan. 30, 2007); *Blalock v. Wilson*, 2006 U.S. Dist. LEXIS 65794, 2006 WL 1866666 (N.D. Ohio June 30, 2006); *United States v. Tennyson*, 88 F.R.D. 119, 121 (E.D.Tenn.1980).  Grand jury material may be disclosed where it appears that failure to do so will deny the defendant a fair trial.  *Blalock*, 2006 U.S. Dist. LEXIS 65794, 2006 WL 1866666; *State v. Sellards*, 17 Ohio St.3d 169, 173, 17 Ohio B. 410, 17 Ohio St.3d 169, 478 N.E.2d 781 (1985).  The particularized need requirement is not satisfied by a generalized request to inspect grand jury testimony.  *Tennyson*, 88 F.R.D. at 121.

*Treesh v. Bagley*, 2007 WL 1039081 at * 17 (N.D. Ohio March 31, 2007) (Oliver, J.).

*See also Russell*, 2008 WL 4534144 at * 16. ; *Garrett v. Moore*, 2007 WL 315093 at * 10 (S.D. Ohio Jan. 30, 2007).

Here, the state appellate court determined Petitioner failed to articulate a "particularized need" for access to the grand jury transcripts because he "provided no

evidence that Prosecutor DeVine solicited any testimony from any witnesses regarding his prior conviction based on Prosecutor DeVine's prior representation of him or relied on any knowledge that he may have obtained from his prior representation of him." *Richardson*, 17 N.E.2d at 650.  Thus, the court found Petitioner's request was "based only on speculation of prosecutorial misconduct and his own fishing expedition to see if the indictments were properly issued."  *Id.* at 651-652.  Nothing contained in the state appellate court decision is contrary to or an unreasonable application of clearly established federal law because, as that court observed, Petitioner did not demonstrate beyond mere speculation that the Prosecutor improperly relied on confidential attorney client information during the grand jury proceedings herein.  *See Coley v. Bagley*, 2010 WL 1375217 at * 52 (N.D. Ohio April 5, 2010) (Wells, J.) *aff'd by Coley v. Bagley*, 706 F.3d 741, 752-753 (6th Cir. 2013).  Moreover, Petitioner does not specify any unreasonable state court factual findings.

Accordingly, this ground is without merit.

### VI. Conclusion.

For the reasons given above, the petition should be dismissed with prejudice.


Date: May 19, 2016                                    /s/ *Nancy A. Vecchiarelli*
                                                     United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.**

23

**See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also* *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**